So we are unable to find that there was here any title, either legal or equitable, upon which any right of lien could have been exercised by the plaintiff, January 28, 1927, or at this time.

The petition is, therefore, dismissed.

Common Pleas Court of Clark County.

MINA OVERHOLSER V. PURE OIL COMPANY.

Decided March 28, 1927.

Martin & Corry, for the plaintiff.
Clark & Campbell, for defendant.

KRAPP, J.

The defendant has filed a motion in this case to require the plaintiff to strike from her petition the allegation that the defendant's employe, in the exercise of ordinary care, could have and should have seen the position of peril of the plaintiff.

The court is of the opinion that this motion is well made, and the first and second branches of the motion are therefore sustained.

The court has given this decision on the motion as it applies to the doctrine of last chance, in order that counsel may not be under the necessity of reading the remainder of this opinion which deals with that question.

This opinion on that phase of the case will probably be very lengthy before it is finished, and is being given as much for the purpose of clarifying the court's own views, as well as to aid counsel in other cases in this court, where the last chance doctrine is attempted to be plead.

There seems to be considerable confusion on this question—a state of affairs which the Supreme Court has had opportunity to remedy, but which they have perhaps further confused by their latest decisions.

I know of no better way to approach this subject than to take up the leading cases in Ohio in chronological order and analyze them.

We will begin with the case of *Railroad Company* v. *Kassen*, 49 O. S., page 230. In that case a passenger fell from the rear of a train onto the tracks and was left there in a helpless condition. A train following some two hours later killed him while he was still on the track.

The doctrine of last chance was successfully relied upon in that case for recovery. The first syllabus is as follows:

"It is a well settled rule of the law of negligence, that the plaintiff may recover, notwithstanding his own negligence exposed him to the risk of the injury of which he complains, if the defendant, after he became aware, or ought to have become aware, of the plaintiff's danger, failed to use ordinary care to avoid injuring him, and he was thereby injured."

The unfortunate part of that syllabus is the use of the words "ought to have become aware." The facts of the

case are that the defendant company was aware that the injured man was on the track. This knowledge was in the possession of the trainmen of the train from which he fell. The operators of the train which injured him, were in no wise negligent in not seeing him on the track, but the negligence of the defendant consisted in its knowledge of his dangerous position and the failure to remove him, or send a warning to the second train that the man was in a dangerous position.

The phrase "ought to have become aware," therefore means, in this case, not that the engineer and firemen of the second train ought to have seen him, but that they ought to have become aware of his position by information previously communicated to them. The language employed in the third paragraph of the syllabus omits altogether the phrase "ought to have become aware," and only ⋅charges liability on the defendant after becoming aware of the danger.

The next case is that of the *Erie Railroad Company et al.* v. *McCormick, etc.*, 69 O. S., page 45.

In that case the court clearly points out the limitation of the Kassen case, and announces the rule of law in the third syllabus, as follows:

"In an action against a railroad company by one who, by his own fault is upon its tracks and in a place of danger, to recover for a personal injury caused by the failure of its employes operating one of its trains to exercise due care after knowledge of his peril, it is necessary to show actual knowledge imputable to the company."

At the trial of this case the court instructed the jury that the company would be liable if the engineer ought, by the exercise of ordinary care, to have seen the deceased in his perilous position, and could by the exercise of ordinary care have avoided the collision. This charge was disapproved by the Supreme Court.

On page 53 the court announces the following rule:

"The concrete rule upon the subject is, that if one is upon the track of a railway company by his own fault and in peril of which he is unconscious, or from which he cannot escape, and these facts and conditions are actually known by the engineer, it is his duty to exercise all rea-

sonable care to avoid the infliction of injury. It does not impose the duty to exercise care to discover that one so upon the track is in a place of danger, but it does impose a duty to be exercised upon actual discovery. No matter if the rule did originate in considerations of humanity, it is an established rule of the law which does not unreasonably interfere with the rapid movements of trains, nor is it ordinarily difficult of application if earnest and impartial efforts are made to apply it according to its terms and obvious import."

It is true that in this case the injured man was an employe on a bridge, where there was no duty devolving upon the engineer to look for him, but we hope later to show that is not material.

The next case is *Drown* v. *Northern Ohio Traction Company,* 76 O. S., page 234. The second syllabus being as follows:

"The doctrine of 'last chance,' as formulated in *Railroad Co.* v. *Kassen,* 49 O. S., 230, paragraph one of syllabus, does not apply where the plaintiff has been negligent, and his negligence continues, and, concurrently with the negligence of the defendant, directly contributes to produce the injury; it applies only where there is negligence of the defendant subsequent to, and not contemporaneous with, negligence by the plaintiff so that the negligence of defendant is clearly the proximate cause of the injury, and that of the plaintiff the remote cause."

At page 247, the court employs the following language:

"This doctrine is logically irreconcilable with the doctrine of contributory negligence, and accordingly it has been vigorously criticised and warmly defended. Probably, as in many such controversies, the truth lies in middle ground; but it is certain that the rule is applicable only in exceptional cases, and the prevalent habit of incorporating it in almost every charge to the jury in negligence cases, in connection with, and often as a part of, instructions upon the subject of contributory negligence, is misleading and dangerous.

"This confusion seems to arise either from misapprehension of the law or a want of definite thinking. The doctrine of the 'last chance' has been clearly defined by a well-known text-writer as follows:

" 'Although a person comes upon the track negligently, yet if the servants of the railway company, after they see his danger, can avoid injuring him, they are bound to do

so. And, according to the better view with reference to injuries to travelers at highway crossings—as distinguished from injuries to trespassers and bare licensees upon railway tracks at places where they have no legal right to be—the servants of the railway company are bound to keep a vigilant lookout in front of advancing engines or trains, to the end of discovering persons exposed to danger on highway crossings; and the railway company will be liable for running over them if, by maintaining such a lookout and by using reasonable care and exertion to check or stop its trains, it could avoid injury to them.' (2 Thompson, Negligence, Sec. 1629.)

"Now it must be apparent upon even a slight analysis of this rule that it can be applied only in cases where the negligence of the defendant is proximate and that of the plaintiff remote; for if the plaintiff and the defendant both be negligent and the negligence of both be concurrent and directly contributing to produce the accident, then the case is one of contributory negligence pure and simple. But if the plaintiff's negligence merely put him in the place of danger and stopped there, not actively continuing until the moment of the accident, and the defendant either knew of his danger, or by the exercise of such diligence as the law imposes on him would have known it, then, if the plaintiff's negligence did not concurrently comb'ne with defendant's negligence to produce the injury, the defendant's negligence is the proximate cause of the injury and that of the plaintiff is a remote cause. This is all there is of the so-called doctrine of 'the last clear chance.' "

"It is clear, then, that the last chance rule should not be given as a hit or miss rule in every case involving negligence. It should be given with discrimination."

The facts in that case show that the plaintiff drove his team upon the track of the defendant, in front of an approaching car, without looking or taking precaution for his safety; that the approach of the car could have been seen and heard, if he had exercised ordinary care.

The next case is *Traction Company* v. *Brandon, Admr.*, 87 O. S., page 187. The third paragraph of the syllabus is as follows:

"Where the motorman of a street car being operated on a public street in a much frequented part of a city, discovers, or by the exercise of ordinary care and watchfulness should discover, that the driver of a smaller vehicle is about to cross the track at a street crossing, in front of

such car, it is the motorman's duty to use ordinary vigilance to stop or check the car in order to avoid a collision; and the fact that such driver may have omitted to look for the approach of the car will not, as matter of law, defeat his right to recover for injury from a collision with such car if the motorman has not used such vigilance."

The principal question involved in this case was whether or not driving on a track without looking is negligence in all cases as a matter of law, and the question of last chance was not very seriously considered.

It will be noted, however, that at the end of the decision the court uses the following language:

"But, assuming that Brandon was guilty of some negligence in driving on the track, yet if the motorman, in the exercise of even ordinary care, after he saw the horse and appreciated Brandon's peril, had time and opportunity to avoid the possible consequences by checking the car, and neglected to so exercise such care, such neglect would be negligence and might properly be regarded as the proximate cause of the injury."

There the court says the liability should attach after the motorman saw the horse and appreciated Brandon's peril, and nothing is said there about negligence in failing to discover his position.

We next come to the case of *Railway Company* v. *Landesman et al.*, 7 Ohio App. Rep., 79, the syllabus of which is as follows:

"A motorman is bound to use ordinary care to prevent injury to one who is rightfully on the track of the railway company and in a position of peril, when he discovers, or in the exercise of ordinary care would discover, such person so exposed to danger."

It will be noticed that in this case the plaintiff fell upon the railway track and was injured by the car of the defendant. If he was negligent in the first place in going upon the track, it does not appear that his negligence continued thereafter up to the time of the accident, and this phase of the case is discussed at the end of the decision.

The next case in order is *West Recr.*, v. *Gillette, Admr.*,

95 O. S., page 305. The court discusses the doctrine of last clear chance in this case, but evades the question as to the duty of the motorman to become aware of the perilous position of the person on the track, on the theory that the testimony of the motorman himself was that he saw the horse and buggy, and actually had it continually in view for a distance of several hundred feet.

Under such a state of facts it is obvious that this decision can not have much weight in defining the doctrine of last chance.

The trial court, in its charge to the jury, uses the language, "when by ordinary care he (the motorman) ought to have seen this horse and buggy on the track."

The court then says, this language could not have confused the jury because it must have found the motorman actually saw the horse and buggy in time to have stopped the car.

The court then says:

"Even if it be conceded that the words were erroneously used, no prejudice could have resulted to the defendant."

The court here had an opportunity to clarify the rule of last chance, but instead of doing so, by the use of their expression, further clouded the question. The inference naturally being that the matter was, at least, debatable.

We now come to the last case, which is that of *Pennsylvania Co.* v. *Hart,* 101 O. S., page 196, the first syllabus of which is as follows:

"It is error for the trial court in his charge to the jury to charge the doctrine of 'last clear chance' where there is no evidence tending to prove a state of facts bringing the case within the rule."

The facts in this case show that the plaintiff was riding with the driver of a truck, and was struck at a railway crossing. He alleges that the truck was seen on the crossing in a helpless condition in time to stop the train.

The driver of the truck was apparently negligent in not looking, but this negligence could not be imputed to the plaintiff. The court therefore held that this was not a case for the application of the doctrine of last clear chance, for the reason that the plaintiff was either negligent or

not negligent, and that that was a question for the jury to determine. If he was negligent, his negligence must have been concurrent with that of the defendant. If he was not negligent, the defendant was liable.

"In neither event would the doctrine of 'last clear chance' apply. The doctrine of 'last clear chance' is not an extension of the doctrine of comparative negligence as applicable to master and servant to other than master and servant. Nor is it available for the purpose of excusing contributory negligence continuing up to and at the time of the accident."

Let us now assume a state of facts and attempt to apply these principles. "A" is walking along a narrow, paved highway, although a cinder path has been provided along the highway for the use of pedestrians. "B" is operating an automobile along this highway, and there is a collision. "A" is assumed to be negligent under the circumstances in walking where he was. As "B" approaches he either sees "A" or he does not see him, and "A" either sees "B" or he does not see him, or he sees him, and in spite thereof continues on the roadway. If "B" sees "A" in time to avoid striking him, and does not stop his car, he is liable.

To call it negligence on his part, is too kind a word. It is a wanton and wilful act, and the recovery ought to be on the ground of assault and battery rather than negligence, and it makes no difference if "A," under such circumstances either knows, or does not know, of the approach of the car. If he does not know, he is negligent but his negligence is not the proximate cause. If he does know, his deliberate negligence is still not the proximate cause, but no doubt would operate in mitigation; no man has the right to deliberately run upon a person, no matter how aggravating the circumstances. But if "B" does not know of the presence of "A" upon the highway, he is only guilty of negligence in failing to exercise a proper care in looking ahead, but "A" being also negligent in being where he was, it is quite clear that it is a case of concurring negligence, and one can not be said to be more proximate than the other, and to apply the doctrine of last clear chance would practically abolish the rule of contrib-

utory negligence, or establish the rule of comparative negligence.

We will now further assume that "A" while negligently walking along the highway, falls unconscious in a perilous position. "B" runs into him. If "B" saw him in time to avoid the accident, it would be a wanton and wilful act justifying an action for assault and battery. If he did not see "A" then the accident was due to the fact that he was negligent in not looking ahead, but it can not be said that "A" was negligent is not getting off the highway, because he was only negligent while he was consciously walking in a dangerous position, and negligence ceased when he could no longer extricate himself from a position of danger. Under such a state of facts as last indicated, the jury could properly be instructed that "B" would be liable if he saw "A" or, in the exercise of ordinary care could have seen him in a position of danger and could have stopped his car in time to avoid the injury.

These instances just stated portray the situations which have occurred to my imagination, under which the doctrine of last clear chance might be attempted to be asserted.

From them, and from the decisions we may announce the rule to be that the defendant is liable in all cases where, after seeing the perilous position of the plaintiff, he can avoid the injury, but where the defendant did not see the plaintiff in his perilous position, but in the exercise of ordinary care ought to have seen him, he is only liable when the plaintiff is at that time free from negligence, and cannot extricate himself.

Reliance upon the doctrine of last clear chance for recovery must always raise the presumption that the plaintiff was previously negligent in some respect, and that the negligence is proximate.

An examination of the case which has caused the court to write such a lengthy opinion, in my judgment does not disclose a state of facts which would warrant an application of the doctrine of last clear chance.

The plaintiff got out of her car and continued to be practically at the same place. This may or may not have been negligence. If it was not negligence, there is no occasion for applying the doctrine. If it is negligence, there is nothing to indicate any change from which an inference might be made that negligence had terminated.